UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EL MAURO RAZIN ALI ex rel.
KALE COFIELD,

                       Plaintiff,

   v.                                         1:22-CV-944 (GTS/ATB)

JEREMY LIGGETT, et al.,

                       Defendants.

---

EL MAURO RAZIN ALI ex rel. KALE COFIELD, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the court is a pro se complaint, filed pursuant to 42 U.S.C. § 1983. (Complaint ("Compl.")) (Dkt. No. 1). Plaintiff has paid the filing fee.

**I.**    **Initial Review**

The court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond. However, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Preacely v. City of New York,* 622 F. App'x 14, 15 (2d Cir. 2015) (citing *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490

U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

Plaintiff alleges that on June 9, 2022, he "spoke with" defendant Lieutenant Adam Nowicki of the Schenectady Police Department ("SPD") concerning plaintiff's "unalienable RIGHT to travel," and provided Lt. Nowicki with "an affidavit and case law" to that effect. (Compl. at CM/ECF p. 6). Lt. Nowicki "disregarded" and "denied" the arguments presented by plaintiff, and "implied" that plaintiff was "a so called 'sovereign citizen' which is slanderous." (*Id.*). Lt. Nowicki informed plaintiff that "if [he was] driving without a license [he would] get a ticket and have to fight [the ticket] in court," which plaintiff maintains was a "conspiracy to violate [his] rights under color of law." (*Id.*).

On July 26, 2022, at approximately 5:15 p.m., defendant "Traffic Enforcement Patrolman" Jeremy Liggett of the SPD "commenced what he perceived to be a traffic

stop[.]" (*Id.*). Officer Liggett stated that he stopped plaintiff because plaintiff's license plate was "covered up with plastic," and Officer Liggett "couldn't tell if it was a legit plate or what state it was issued out of." (*Id.*). Plaintiff informed Officer Liggett that it was a "private [license] plate." (*Id.*). Then, Officer Liggett "began to solicit information in regards to [plaintiff's] private automobile under the presumption that it had to be registered with some DMV of some state in order for [plaintiff] to travel lawfully," which plaintiff alleges is "blatantly false." (*Id.*). Plaintiff states that he presented Officer Liggett with the same information he had previously provided to Lt. Nowicki, in addition to other paperwork. (*Id.*). Plaintiff alleges that Officer Liggett "refused to read or fill out the appropriate documents to amend the roadside encounter peacefully," and that Officer Liggett implied that plaintiff was a "sovereign citizen." (*Id.*).

Plaintiff further states that it was his "right to travel" without any "commercial or Municipal state insignia attached whatsoever" to his vehicle, thus Officer Liggett had "absolutely no reasonable articulable suspicion or probable cause to lawfully pull [plaintiff] over or detain and falsely arrest [plaintiff]." (*Id.* at CM/ECF pp. 6-7). Plaintiff alleges that after being "threatened and coerced with arrest" he displayed his "private trustee travelers identification." (*Id.* at CM/ECF p. 7). Officer Liggett then used the identification to "search up an entity in his police database unlawfully" and used the information to "falsely arrest" plaintiff. (*Id.*). Plaintiff was released from the scene, and Officer Liggett called "a tow company" "to steal [plaintiff's] private property," which plaintiff could not get back unless he showed "them proof of

ownership" and paid "$210 plus storage," which he alleges was "complete extortion and racketeering." (*Id.*).

Plaintiff alleges that defendant SPD Chief Eric Clifford is "just as guilty as his subordinates due to the fact that he could have taken preventative measures to assure his subordinates did not violate [plaintiff's] inalienable rights." (*Id.*). Plaintiff is seeking $800,000 in punitive damages. (*Id.* at CM/ECF p. 5).

### III. Claims Against Lt. Adam Nowicki

Plaintiff's complaint fails to allege any cognizable claim against Lt. Nowicki, whether under § 1983 or any other federal cause of action. According to plaintiff's allegations, Lt. Nowicki merely informed plaintiff that the consequence of driving without a license would be the issuance of a traffic ticket, despite plaintiff's contrary beliefs. There is no indication that plaintiff was being detained, or in custody, at any time during his interaction with Lt. Nowicki.

To the extent plaintiff alleges that Lt. Nowicki's statement amounted to a "conspiracy to violate [his] rights under color of law," this claim holds no merit. The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional

rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotations and citation omitted); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). Moreover, conspiracy claims "fail[ ] as a matter of law where there is no underlying constitutional violation." *Tirse v. Gilbo*, 15-CV-0987, 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) (Suddaby, C.J.).

At the outset, plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy. Plaintiff has not alleged any overt act in furtherance of the alleged conspiracy, much less how the defendants acted in concert to inflict an unconstitutional injury on plaintiff. On the contrary, Lt. Nowicki merely informed plaintiff of the consequence of violating New York State Traffic Law. For these reasons, and because the court is recommending dismissal of the predicate constitutional claims, as further discussed below, the court recommends dismissing plaintiff's conspiracy claims under § 1983.

Plaintiff's allegation that Lt. Nowicki "slandered" him might be liberally construed as a "stigma plus" claim under § 1983 for a violation of plaintiff's right to due process. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). To prevail on a "stigma plus" claim, a plaintiff must show "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights" in addition to the stigmatizing statement. *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah*, 383 F.3d at 38). Even palpably false statements by a governmental actor will not support a federal claim if the only injury is to the plaintiff's reputation. *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *Sadallah*, 383 F.3d at 38 ("[D]eleterious effects [flowing] directly from a sullied reputation," standing alone, do not constitute a "plus.").

Plaintiff alleges that Lt. Nowicki "implied" that he was a "so called 'sovereign citizen.' " (Compl. at CM/ECF p. 6). Nowhere in the complaint does the plaintiff allege anything about the "deprivation of a legal right or status" in connection with defendant's purportedly derogatory remarks. *Abramson v. Pataki*, 278 F.3d 93, 101, 103 (2d Cir. 2002); *see also Zherka v. Amicone*, 634 F.3d 642, 645-46 (2d Cir. 2011) ("Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort."). Because Plaintiff does not allege that Lt. Nowicki's comments resulted in a deprivation of any liberty or property protected by due process, he does not state a "stigma plus" claim under section 1983 for a violation of his due process rights. Based on the aforementioned, plaintiff's claims against Lt. Nowicki should be dismissed.

6

## IV. <u>Claims Against Officer Liggett</u>

Liberally construed, plaintiff's allegations against Officer Liggett may be interpreted as a claim for false arrest. Courts analyzing § 1983 claims for unconstitutional false arrest generally look to the law of the state in which an arrest occurred. *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006). Under New York law, to establish a false arrest claim, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted).

An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Plaintiff alleges that Officer Liggett told him that he pulled over plaintiff's car because plaintiff's license plate was obstructed, and Officer Liggett could not

7

determine whether plaintiff's license plate was "legitimate." (Compl. at CM/ECF p. 6). Plaintiff does not dispute that his license plate was obstructed or otherwise in violation of New York State Traffic Law. Instead, he argues that his license plate was "private," and that plaintiff had no obligation to register his vehicle with "some state." (*Id.*). Because it is undisputed that plaintiff was operating his vehicle with an obstructed license plate, that was apparently unregistered, Officer Liggett had probable cause to believe that plaintiff had violated, among other things, Section 402 of the New York Vehicle and Traffic Law. *See* N.Y. Veh. & Traf. Law § 402(1)(b); *see also United States v. Wilson*, 699 F.3d 235, 244 (2d Cir. 2012) (Because "the officers had observed that [plaintiff's] license plate was covered by snow and road debris, the officers had probable cause to believe that Wilson had violated Section 402(1)(b) of the New York Vehicle and Traffic Law by driving with an obstructed license."). Because probable cause existed for Officer Nowicki to stop plaintiff's vehicle, plaintiff fails to state a claim of false arrest.

Plaintiff's affiliated claim that Officer Liggett's conduct was a "direct attempt" to deprive plaintiff of his constitutionally protected right to travel freely and unencumbered is equally meritless. "The Constitution protects a fundamental right to travel within the United States, which we have also called 'the right to free movement.'" *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); *cf. Saenz v. Roe*, 526 U.S. 489, 500 (1999) (noting that "[t]he 'right to travel' . . . embraces . . . three different components," including "the right of a citizen of one State to enter and leave another

8

State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for travelers who elect to become permanent residents, the right to be treated like other citizens of that State."). Plaintiff's complaint does not allege any component of interstate travel. Instead, plaintiff's allegations regarding his right to travel relate to the traffic stop, his subsequent "arrest," and the towing of his car. As a result, plaintiff's "right to travel" claim is subject to dismissal. *See also Buchholz-Kaestner v. Fitzgerald*, No. 16-CV-0604 (GTS), 2017 WL 2345589, at *6-7 (N.D.N.Y. May 30, 2017) (dismissing in its entirety the plaintiff's complaint including his "right to travel" claim where the complaint alleged that the police department "harasses me when I drive in my private vessel non-commercial. Private use only. Rightful use of American easement."). For all of these reasons, plaintiff's claims against Officer Liggett should be dismissed.

## V.     Claims Against Chief Eric Clifford

The complaint may be construed as against Chief Clifford for claims of supervisory liability. Plaintiff alleges that Chief Clifford "could have taken preventative measures to assure his subordinates did not violate [plaintiff's] inalienable rights." (Compl. at CM/ECF p. 7). "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020).

At the outset, the dismissal of any § 1983 claims against Chief Clifford's "subordinates," as is being recommended by this court, would eliminate the possibility of any supervisory liability against him. *See, e.g., Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) (summary order) ("Because there is no underlying constitutional violation, [the] supervisory liability claim also fails."); *Raspardo v. Carlone*, 770 F.3d 97, 127 (2d Cir. 2014) ("Liability cannot be imputed to [the supervisor] without an underlying constitutional violation."); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

Moreover, plaintiff has failed to "plead and prove that [the supervisor-] defendant, through [his] own individual actions, has violated the constitution." *Tangreti*, 2020 WL 7687688, at *6 (internal quotation marks omitted). Plaintiff's attempt to plead personal involvement based upon conclusory, "preventative measures" that could have been taken lacks merit, because the complaint does not plausibly allege "[t]he factors necessary to establish" a link between a constitutional violation and acts that Chief Clifford participated in directly. *See Bagley v. Miller*, No. 20-CV-0683, 2021 WL 1759785, at *2 (N.D.N.Y. Apr. 8, 2021) (recommending dismissal under *Tangreti* for "fail[ing] to specifically articulate [the defendant's] personal involvement in the alleged constitutional violations" . . .), *report and recommendation adopted*, 2021 WL 1758892 (N.D.N.Y. May 4, 2021); *Montes v. O'Shea*, No. 21-CV-0303, 2021 WL 1759853, at *9 (N.D.N.Y. Apr. 6, 2021) (recommending dismissal under *Tangreti* because the complaint was "devoid of any facts explaining how [the defendant], or

anyone in the [defendant's o]ffice, was involved in [the] plaintiff's criminal action."), *report and recommendation adopted,* 2021 WL 1758858 (N.D.N.Y. May 4, 2021). Accordingly, I recommend that plaintiff's claim of supervisory liability against Chief Clifford be dismissed.

### VI. Claims against Christopher Kuglar

Plaintiff has named Christopher Kuglar of H&R Towing as a defendant in this action. Although Mr. Kuglar is not named anywhere in the body of the complaint, the court surmises that plaintiff's claims as against him are in relation to the portion of the complaint alleging that a tow company was called to the scene of the traffic stop to "steal" plaintiff's "private property," amounting to "extortion and racketeering." (Compl. at CM/ECF p. 7).

Assuming for the moment that plaintiff had established state action as against Mr. Kuglar for towing his vehicle,[1] plaintiff has failed to allege how this conduct was a deprivation of his constitutional rights. As previously discussed, Officer Liggett had probable cause to stop plaintiff's vehicle. Moreover, plaintiff has failed to advance any additional support for how the ultimate towing of his vehicle, which was unregistered, and was being driven illegally by an unlicensed driver, amounted to "extortion or racketeering," much less any other violation under § 1983. *See People v. Turner,* 91

---

[1] The court notes that there is authority finding that a tow truck operator is a state actor for purposes of a Section 1983 claim. *See Stypmann v. City and Cty. of San Francisco*, 557 F.2d 1338, 1341-42 (9th Cir. 1977) (finding state action for purposes of Section 1983 claim where towing company towed illegally parked cars at request of police department); *Tedeschi v. Blackwood*, 410 F. Supp. 34, 41-42 (D. Conn. 1976) ("[T]he towing of an abandoned, unregistered, or dangerously parked motor vehicle . . . by either the police or a private garage constitutes 'state action' " for purposes of a Section 1983 claim.).

A.D.2d 646, 646 (2nd Dep't 1982) ("Defendant was driving without a license in an unregistered, uninspected and uninsured vehicle bearing improper plates. Under these facts, the officers who stopped the defendant clearly had the right to impound his car."). Accordingly, plaintiff's claims as against Mr. Kuglar should be dismissed.

### VII. Opportunity to Amend

#### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

#### B. Application

There is no amendment that plaintiff can make to his complaint that would allow him to sue these defendants. The defects in plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. Moreover, despite plaintiff's denial of any affiliation with the "sovereign citizens," his claims are founded on a legal theory that has been uniformly rejected as not just lacking in merit, but a frivolous waste of court resources. *See Tyson v. Clifford*, No. 3:18-CV-1600, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) ("Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible."); *Buchholz-Kaestner v. Fitzgerald,* No. 6:16-CV-0604(GTS/TWD), 2017 WL 2345589, at *6 (N.D.N.Y. May 30, 2017) (listing cases). Accordingly, the

Court cannot conclude that granting leave to amend has any likelihood of being productive in this instance.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the complaint be dismissed sua sponte **WITHOUT PREJUDICE, BUT WITHOUT THE OPPORTUNITY FOR AMENDMENT**; and it is further

**ORDERED** that the defendants' deadline to answer or otherwise respond to plaintiff's complaint be stayed until the District Judge has ruled on the instant Report-Recommendation.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 20, 2022

Andrew T. Baxter
U.S. Magistrate Judge